[No. 37708.  Department One.  November 18, 1965.]

JOE MERRICK *et al., Appellants,* v. SEARS, ROEBUCK & COMPANY, *Respondent.*[*]

*Charles T. Morbeck,* for appellants.

*Leavy & Taber,* by *John G. Schultz,* for respondent.

HALE, J.—A slip, a fall and an order of dismissal at the close of plaintiffs' evidence bring the case here on appeal.

Lana Merrick started working at the Sears, Roebuck & Company store in Pasco in June, 1961. She shared use of

*Reported in 407 P.2d 960.

the women's rest room maintained by the store for a staff of about 50 women employees. The rest room consisted of a lounge and a separate room referred to as the washroom. In the washroom, where the accident took place, were five toilets in stalls along one wall and along the opposite wall five wall-hung lavatories, each of the latter having a liquid soap dispenser. At the end of the room on the narrow wall was a crank-down paper towel dispenser. The washroom floor, composed of small rectangular ceramic tiles, had a drain near the center approximately opposite the third lavatory from the towel dispenser.

February 15, 1963, Mrs. Merrick reported for work at her usual job in the auditing department. At 10 a.m. or thereabouts, she went into the lounge and washroom during her coffee break, but observed nothing unusual. About 11 a.m., she returned to the washroom to remove some ink stains from her hands at the lavatory. She washed her hands with liquid soap, dried them at the towel rack, and, in turning to leave, slipped and fell. She described the accident in this way:

> [A]nd then I stood and ran the little towel rack down to get some paper to dry my hands with, and I dried my hands and threw the paper away, and as I was in the process of turning to leave, my feet slipped from under me, and I fell backward and hit my head.

She then related the only fact from which, in her whole testimony, any inference of negligence could possibly be asserted:

> Well, after I hit my head I was quite stunned, and I didn't just scramble up from the floor; I got up fairly cautiously, and in getting up I felt water on the floor with my hand. Q. . . . [T]here was water there on the floor? A. Yes.

Our study of the trial record reveals only one other bit of evidence which even remotely suggests negligence. A fellow employee at Sears, Jacqueline Sloppy, testified that about 3 that afternoon—Mrs. Merrick had fallen about 11 a.m.—she looked at the floor near the second lavatory from the towel rack to see if there was water on the floor and

observed, as she described it, that "there was a few drops there." In portraying the general appearance of the floor, she said:

> A. Well, it appeared to be mopped with dirty water. . . . A. Oh, kind of dingy. It didn't have the full depth of the color.

And, on cross-examination:

> Q. There was no puddle? A. No. . . . Q. And as I understand, except for these few drops of water you saw over here by the second basin, you saw no other water on the floor at all? A. No.

Mrs. Merrick also described the floor as it would appear when "you mop a floor with dirty water and you don't rinse it; like a soap scum that isn't taken off."

No one testified that the floor had a slippery soap scum on it, or that it had more than the few drops of water on it ordinarily to be expected in a rest room. Nor was there any evidence that the ceramic tile floor was slippery or contained any foreign substance which would make it slick or slippery. Other than the few words employed to describe its dull color, by comparing it to a floor mopped and then rinsed with dirty water as though a soap scum had been left on it, this record shows no evidence of a slippery soap scum.

Mrs. Merrick said that she felt the floor with her hand and it was wet, but she wholly failed to elaborate upon this, and one could not infer therefrom that the floor had (1) an inordinate amount of water in such a quantity as to render it dangerously slippery, or (2) that the wetness persisted to a dangerous degree for a sufficient time to charge the store with notice of the wet and slippery condition.

■ A motion for dismissal admits the truth of plaintiffs' evidence and all inferences favorable to them arising therefrom, and in ruling upon the motion, if the evidence allows more than one reasonable interpretation, the court must interpret the evidence most strongly against the moving party and most favorably to the opposing party. The

court cannot grant the motion unless there appears to be no substantial evidence to support the claim.

We applied these rules recently in two slip-and-fall cases (*Miller v. Payless Drug Stores,* 61 Wn.2d 651, 379 P.2d 932 (1963), and *Messina v. Rhodes Co., ante* p. 19, 406 P.2d 312 (1965)), but found in each of them sufficient evidence to go to a jury on the issue of negligence.

In both cases, we noted specific evidence of negligence—excessive wax on the floor in *Miller,* and sand, water and mud in *Messina*—appearing to have existed in each instance for a sufficient time and under such conditions as to permit a jury to find actual or chargeable knowledge thereof in the store where the accident took place.

Negligence cannot be inferred from the fall alone, nor from mere dampness or wetness where it is to be expected in some degree under conditions showing the exercise of ordinary care in the design, construction and maintenance of the floor. *Knopp v. Kemp & Hebert,* 193 Wash. 160, 74 P.2d 924 (1938); *Shumaker v. Charada Inv. Co.,* 183 Wash. 521, 49 P.2d 44 (1935).

In the present cause, no inference of negligence can be drawn either from the existence of a few drops of water on the rest room floor as described by one witness or that the floor felt wet to Mrs. Merrick's hand. Nor could an inference be drawn from her testimony alone that water was present in extraordinary quantities with the store's knowledge, under such circumstances as to charge the store with such knowledge. Neither can the existence of a slippery soap scum on the floor be inferred from a statement that the floor lacked brightness or depth of color as though mopped and rinsed with dirty water. This latter evidence did not leave any inference that a slippery soap scum had been allowed to coat the floor—but regarded in a light most favorable to plaintiffs does not go beyond a description that the floor, wanting in brightness, had not been adequately scrubbed. Any idea of a negligently maintained washroom floor derived from such evidence would be no more than a guess or hunch—a highly speculative conjec-

ture—for no one testified that a soap scum existed or that the floor was in fact slippery.

There being no evidence then of negligence in the construction, maintenance, or inspection of the washroom floor, fixtures or equipment, the trial court properly dismissed the action at the close of plaintiffs' evidence.

Judgment affirmed.

ROSELLINI, C. J., HILL and OTT, JJ., and LANGENBACH, J. Pro Tem., concur.